1

2

3

4

UNITED STATES DISTRICT COURT

5

NORTHERN DISTRICT OF CALIFORNIA

6

7 | BIOQ PHARMA INCORPORATED,

Case No.  23-cv-00399-AMO

8 |                 Plaintiff,

9 |      v.

**ORDER RE MOTION FOR DEFAULT AND MOTION TO SET ASIDE DEFAULT**

10 | STAR CAPITAL INVESTMENTS LLC, et al.,

Re: Dkt. Nos. 16, 18

11 |              Defendants.

12

13       Before the Court are Plaintiff BioQ Pharma Incorporated's Motion for Entry of Default or,

14 in the Alternative, to Permit Alternative Service filed by (ECF 16) and a Motion to Set Aside

15 Default filed by Defendants GS Holding and Star Capital Investments LLC (ECF 18).  The

16 motions are fully briefed and suitable for decision without oral argument.  Accordingly, the

17 hearing set for January 18, 2024, is **VACATED**.  *See* Civil L.R. 7-6.  Having read the parties'

18 papers and carefully considered their arguments and the relevant legal authority, and good cause

19 appearing, the Court hereby **GRANTS** Defendants' motion to set aside default, **DENIES as moot**

20 Plaintiff's motion for default, and **DENIES without prejudice** Plaintiff's motion for alternative

21 service, for the following reasons.

22 **I.**       **BACKGROUND**

23       This case arises from a failed negotiation between Plaintiff BioQ Pharma Incorporated

24 ("BioQ") and Defendants GS Holding, Star Capital Investments LLC, and Gurmeet Singh

25 Bhamrah ("Bhamrah").  BioQ filed its Complaint on January 26, 2023.  ECF 1 ("Compl.").  The

26 Complaint identifies the address of the various Defendants as Dubai, United Arab Emirates

27 ("U.A.E.").  Compl. ¶¶ 2-5.  It alleges that the memorandum of understanding the parties entered

28 into/signed contained an agreement to submit "any controversies arising from the MOU" to

arbitration in San Francisco, California.  Compl. ¶ 6.  On February 4, 2023, BioQ filed the proof of service of summons.  ECF 9.  The summonses were purportedly served on Defendants Star Capital, GS Holding, and Bhamrah on February 2, 2023, via substituted service on an individual (Muhammad Jaseer) by Process Service Network, LLC.  *Id.*  Defendants' answer was thus allegedly due February 23, 2023.  *Id.*

On March 3, 2023, BioQ filed its motion for entry of default as to all Defendants.  ECF 14. On March 14, 2023, the Clerk entered default as to Defendants Star Capital and GS Holding.  ECF 15.  The Clerk declined to enter default as to Bhamrah because BioQ failed to comply with Federal Rule of Civil Procedure 4(f)(2)(C)(i), which requires delivering a copy of the summons and complaint to the individual personally, not through substituted service.  ECF 15.

On March 22, 2023, BioQ filed a motion seeking entry of default against Bhamrah and ratifying the Clerk's entry of default as to Star Capital and GS Holding.  ECF 16.  Alternatively, in the event BioQ's motion for entry of default against Bhamrah is denied, BioQ seeks an order permitting alternative service of the summons and complaint.  *Id.*

Just over a month later, on April 27, 2023, Defendants Star Capital and GS Holding filed a motion to set aside the clerk's default.  ECF 18.  They request that the Court (i) set aside the Clerk's entry of default against Defendants Star Capital and GS Holding, (ii) affirm the Clerk's denial of default as to Defendant Bhamrah, and (iii) deny BioQ's motion for entry of default.  *Id.* Both BioQ's motion for default and the Defendants Star Capital and GS Holdings' motion to set aside default are now fully briefed.  Bhamrah has not yet appeared in the case.

## II.     DISCUSSION

The Court considers the motion to set aside default first.

### A.     Motion to Set Aside Default

#### 1.     Legal Standard

The Court has discretion to set aside a default or a default judgment.  *See* Fed. R. Civ. P. 55(c), 60(b); *Brandt v. Am. Bankers Ins. of Florida*, 653 F.3d 1108, 1111-12 (9th Cir. 2011). Under Rule 55(c), a court may set aside an entry of default for "good cause."  The standard for setting aside an entry of default is less rigorous than the standard for setting aside a default

judgment.  *See Hawai`i Carpenters' Tr. Funds. v. Stone*, 794 F.2d 508, 513 (9th Cir. 1986).

Courts consider three factors in setting aside an entry of default: (1) whether defendant's culpable

conduct led to the default; (2) whether the defendant has a meritorious defense; and (3) whether

the plaintiff would be prejudiced if the default is set aside.  *United States v. Signed Personal*

*Check No. 730 of Yubran S. Mesle*, 615 F.3d 1085, 1091 (9th Cir. 2010).

A court may deny a motion to set aside an entry of default if any one of these *Mesle* factors

favor default.  *Franchise Holding II, LLC. v. Huntington Restaurants Group, Inc.*, 375 F.3d 922,

925-26 (9th Cir. 2004) (citation omitted).  The defendant bears the burden of establishing that the

default should be set aside.  *Id.* (citation omitted).  However, default judgments are generally

disfavored and "[c]ases should be decided upon their merits whenever reasonably possible."  *Eitel*

*v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986).

### 2. Analysis

As noted above, the Clerk entered default against Defendants Star Capital and GS Holding

on March 14, 2023.  ECF 15.  Because the Defendants ask for default to be set aside, the Court

must assess: (1) whether Defendants' culpable conduct led to the default; (2) whether the

Defendants have a meritorious defense; or (3) whether the Plaintiff would be prejudiced if the

judgment is set aside.  *See Mesle*, 615 F.3d at 1091. The Court takes these factors up in turn.

#### a. Culpable Conduct

"[A] defendant's conduct is culpable if he has received actual or constructive notice of the

filing of the action and *intentionally* failed to answer."  *TCI Grp. Life Ins. Plan v. Knoebber*, 244

F.3d 691, 697 (9th Cir. 2001) (emphasis in original), overruled in part on other grounds by

*Egelhoff v. Egelhoff ex rel. Breiner*, 532 U.S. 141 (2001).  "[I]n this context the term

'intentionally' means that a movant cannot be treated as culpable simply for having made a

conscious choice not to answer; rather, to treat a failure to answer as culpable, the movant must

have acted with bad faith, such as an 'intention to take advantage of the opposing party, interfere

with judicial decisionmaking, or otherwise manipulate the legal process.'"  *Id.* (citation omitted).

A party seeking to set aside default is not culpable – even for a knowing failure to answer – if its

failure to answer is for an "understandable reason and not designed to obtain a strategic advantage

3

in the litigation." *Twin Rivers Eng'g, Inc. v. Fieldpiece Instruments, Inc.*, 2016 WL 7479368, at *3 (C.D. Cal. Aug. 10, 2016) (setting aside entry of default where Defendant had "an understandable reason for failing to respond – it believed that Plaintiff did not effect sufficient service and thus a response was not required").

Here, Defendants argue that they had good cause for not timely responding to the Complaint – they believed that BioQ failed to effectuate service under U.A.E. law.  Defendants present evidence that they were unaware they had an obligation to respond, as they genuinely believed they were not validly and adequately served in compliance with United Arab Emirates law.  Rajappan Decl. ¶¶ 2-9 (ECF 34-3 at 2).  The office manager of both Defendants Star Capital and GS Holding explains in part, "Neither Defendant believed they were validly and adequately served in compliance with United Arab Emirates law.  We did not retain counsel to examine this issue, but presumed that leaving documents with a front desk operator was an extension of the general correspondence exchanged by the parties."  Rajappan Decl. ¶ 7.  As discussed more in depth in the subsection below, Defendants had (and still have) a substantial basis to believe that Plaintiff failed to effectuate proper service.

Further, Defendants moved relatively quickly correct the default.  Only six weeks passed between the entry of defaults on March 14 (ECF 15) and Defendants' motion to set aside the default filed on April 27 (ECF 18).  This weighs in favor of finding Defendants did not engage in culpable conduct.  *Cf. Huerta v. Akima Facilities Management, LLC*, 2017 WL 783686, at *3 (N.D. Cal. Mar. 1, 2017) (finding that a period of one month and one week between entry of default and the motion to set aside default to constitute prompt action weighing against culpable conduct).  Defendants reasonably believed that they were not obligated to respond to process improperly served, and Plaintiffs have offered nothing to show that Defendants delayed their response "out of any effort to gain an advantage or delay the inevitable." *RingCentral, Inc. v. Quimby*, 781 F. Supp. 2d 1007, 1011 (N.D. Cal. 2011).  Thus, the Court finds Defendants did not engage in any culpable conduct that resulted in the entry of the Clerk's default, and this factor weighs in favor of setting aside the entry of default.

### b.     Meritorious Defense

To set aside an entry of default, a defendant must "make some showing of a meritorious defense." *Haw. Carpenters' Tr. Funds*, 794 F.2d at 513.  The defendant's burden, however, is "not extraordinarily heavy." *Mesle*, 615 F.3d at 1094.  "All that is necessary to satisfy the 'meritorious defense' requirement is to allege sufficient facts that, if true, would constitute a defense: the question whether the factual allegation is true is not to be determined by the court when it decides the motion to set aside the default." *Id.* (internal quotation marks and citations omitted).

Here, Defendants meet this low bar and present a potential meritorious defense. Defendants allege specific facts that BioQ's attempt to effect service was likely insufficient because BioQ failed to serve Defendants in compliance with U.A.E. law and Rule 4(f).  *See Twin Rivers Engineering*, 2016 WL 7479368, at *4 (holding defendant's allegation that plaintiff failed to effect sufficient service under Taiwanese law was a meritorious defense).  BioQ did not effectuate service through a summons clerk trained by the U.A.E. government.  ECF 9 at 1-3 (bottom of page identifying "Process Service Network, LLC"); ECF 16 at 3; ECF 16-2.  BioQ offers no evidence that Process Service Network is a company authorized by the U.A.E. to serve process.  Indeed, Nelson Tucker, Process Service Network's CEO, offers a declaration that fails to clearly state Process Service Network is authorized by the U.A.E. to serve process.  ECF 16-2 (declaration).

Further, Defendants present several district court cases that found insufficient service on U.A.E.-based defendants to support their belief.  In *Nabulsi v. Nahyan*, 2009 WL 1658017 (S.D. Tex. June 12, 2009), for example, the court examined U.A.E. law for service in the context of a motion to dismiss for lack of personal jurisdiction and improper service.  *Id.* at *7. The *Nabulsi* court found that Process Service Network, the same process server hired by BioQ to effectuate service in this case, failed to show it was authorized by the U.A.E. to serve process.  *Id.*, at *5 ("Plaintiff hired Process Service Network, LLC . . . to serve the summons and complaint in this action.  Nelson Tucker, President of Process Service Network, LLC, states in the Declaration of Service"); *id.* at *9 ("Because plaintiffs failed to submit any evidence showing that Tucker or his

company has been authorized to serve process in the U.A.E., the court concludes that the service upon Sheikh Issa attempted by Tucker fails to satisfy the requirement . . . that service be effected 'as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction'") (internal citation omitted).

BioQ argues that service was proper, and that Defendants had effective notice of the lawsuit, particularly because they are sophisticated and they benefitted from the advice of counsel. ECF 30 at 5-9. Significantly, BioQ argues that *Nabulsi* is no longer good law related to U.A.E. service requirements following some 2014 amendments to the law. *Id.* at 7-8; *see also* Kahn Decl. ¶ 8 (ECF 30-1 at 4). However, the Court need not resolve the merits of Defendants' challenge to service at this stage. *See Mesle*, 615 F.3d at 1094. Defendants allege sufficient facts to show their defense of improper service has some merit, and they accordingly satisfy the second *Mesle* factor for setting aside default.

### c.     Prejudice

A plaintiff is prejudiced when the plaintiff is hindered from pursuing the claim. *Falk v. Allen*, 739 F.2d 461, 463 (9th Cir. 1984); *see also*, *TCI*, 244 F.3d at 701 (finding prejudice when setting aside judgment results in greater harm than delaying resolution of the case). Being forced to litigate on the merits is not prejudicial. *TCI*, 244 F.3d at 701. To constitute prejudice, the setting aside of an entry of default must result in greater harm than simply delaying resolution of the case: "For a delay to be prejudicial, it must result in tangible harm such as loss of evidence, increased difficulties of discovery, or greater opportunity for fraud or collusions." *Yan v. Gen. Pot, Inc.*, 78 F. Supp. 3d 997, 1005 (N.D. Cal. 2015) (internal quotation marks omitted).

Here, BioQ argues the prejudice here is the "additional delay" caused by Defendants, arguing that Defendants have "deliberate[ly] fail[ed]" to answer, and that this is helping Defendants retain the money Plaintiff alleges it is entitled to receive. ECF 30 at 10. Plaintiff fails to identify a tangible harm that would constitute prejudice. Plaintiff fails to describe how setting aside the default would hinder its claim. As Defendants highlight, Plaintiff long could have stipulated to set aside the default and proceed on the merits of the case, obviating the need for the Court to resolve these two motions. Forouzan Decl. ¶¶ 3-5 (describing correspondence in which

1   Defendants offered to stipulate to lift the default).  The Court finds that Plaintiff will not be

2   prejudiced by setting aside the entry of default, satisfying the third *Mesle* factor.

3       Because all three *Mesle* factors weigh in favor of doing so, Court GRANTS GS Holding

4   and Star Capital Investments' motion to set aside default.  Having so found, the Court DENIES as

5   moot Plaintiff's request for ratification of the clerk's entry of default against the entities.

6       **B.      Request for Alternate Service of Process**

7       In addition to BioQ's request for the Court to ratify the clerk's entry of default against GS

8   Holding and Star Capital Investments, BioQ requests permission to effectuate alternative service

9   on Defendant Bhamrah.  Plaintiff seeks

10              an order authorizing alternative methods of service of process
                pursuant to Federal Rule of Civil Procedure 4(f)(3).  The alternative
11              methods of service of process BioQ Pharma seeks approval to use
                are any of the following in order from first to second: (i) express
12              international courier at the defendants' business offices without
                requiring any return receipt or signature; or (ii) a process server's
13              delivery to the receptionist at Bhamrah's last known business
                address.
14

15  ECF 16 at 2.

16      Under Rule 4(f)(3), trial courts may authorize service through a variety of methods,

17  "including publication, ordinary mail, mail to the defendant's last known address, delivery to the

18  defendant's attorney, telex, and most recently, email."  *Rio Props., Inc. v. Rio Intern. Interlink*,

19  284 F.3d 1007, 1016 (9th Cir. 2002).  To comport with due process, "the method of service crafted

20  by the district court must be reasonably calculated, under all circumstances, to apprise interested

21  parties of the pendency of the action and afford them an opportunity to present their objections."

22  *Id.* at 1016-17 (quotation marks and citation omitted).  A party seeking authorization to serve

23  under Rule 4(f)(3) need not show that all feasible service alternatives have been exhausted but

24  instead, it needs to "demonstrate that the facts and circumstances of the . . . case necessitate[ ] the

25  district court's intervention."  *Id.* at 1016.  The decision to provide an order under Rule 4(f)(3) is

26  within the sound discretion of the Court, which must determine whether the "particularities and

27  necessities of a given case require alternative service of process."  *Rio Props.*, 284 F.3d at 1016.

28  The Court finds that the circumstances at bar do not presently necessitate its intervention.

Relevant here, service on an individual in a foreign country is acceptable only if it is in a manner "prescribed by the foreign country's laws for service in that country in an action in its courts of general jurisdiction." Fed. R. Civ. P. 4(f)(2)(A). BioQ has not seemingly attempted to complete service against the Defendants in a method that comported with the requirements of U.A.E. law. *See Nabulsi*, 2009 WL 1658017, at *7 (describing "that process may be served in the U.A.E. by either (1) a summons clerk who is appointed and trained by the relevant governmental authorities, or (2) a private process server who works for a company authorized by the government of the U.A.E. to serve process."). BioQ here does not purport to comply with either method of service under U.A.E. law, and it does not explain why it cannot comply with its service obligations. Moreover, the methods by which BioQ proposes to effectuate service – by leaving a copy of process at his place of business and not requiring a signature to confirm receipt – appears to directly contravene U.A.E. law. The Court declines to permit such alternative service in violation of U.A.E. law absent some demonstration by BioQ that it meaningfully attempted to comply with the foreign jurisdiction's rules for service. BioQ shall attempt to serve Defendant Bhamrah in accordance with Rule 4(f) and U.A.E.'s rules of service, and it may renew its request for alternate service only upon showing that such attempted service failed.

## III.    CONCLUSION

For the foregoing reasons, the Court hereby **GRANTS** Defendants' motion to set aside default, **DENIES as moot** Plaintiff's motion for default, and **DENIES without prejudice** Plaintiff's motion for alternative service. Defendants Star Capital and GS Holding shall file any motions responsive to the Complaint within 28 days from the date of this Order. Plaintiff shall file either a proof of service or a declaration explaining efforts to effectuate service on Defendant Bhamrah within 42 days of this Order.

**IT IS SO ORDERED.**

Dated: January 10, 2024

**ARACELI MARTÍNEZ-OLGUÍN**
**United States District Judge**